IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shawn Michael Robinson, ) | C/A No.: 1:16-2311-BHH-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Holly Scaturo, Director; Ms. Kimberly ) | |
| Poholchuk, B.M.C. Program Director; ) | |
| Ms. Cynthia Helff, B.M.C.; Dr. Kelly ) | |
| Gothard, Psychologist; Dr. Gordon E. ) | |
| Brown, Chief Psychologist; Dr. ) | |
| Rozanna Tross, Psychologist; Dr. Amy ) | |
| Swan, Psychiatrist; Ms. Marie Gehle, ) | REPORT AND RECOMMENDATION |
| Evaluator; Dr. Donna Schwartz-Watts, ) | |
| Psychologist; Capt. Frank Abney, ) | |
| P.S.O. Supervisor; Mr. Galen Sanders, ) | |
| Chief Nursing Administrator; Mr. ) | |
| Harold Alexander, R.N.; Ms. Charlene ) | |
| Hickman, R.N.; Dr. John McGill, ) | |
| Director of Department of Mental ) | |
| Health; and Mr. Allen Wilson, Attorney ) | |
| General, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Shawn Michael Robinson ("Plaintiff"), proceeding pro se and in forma pauperis, is involuntarily committed to the custody of the South Carolina Department of Mental Health ("SCDMH") under the provisions of the Sexually Violent Predator Act, S.C. Code Ann. § 44-48-10, *et seq.* ("SVPA"). He filed this action, alleging several violations of his constitutional rights. This matter comes before the court on Defendants'[1] motion for summary judgment [ECF No. 52]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

---

[1] Although Swan does not technically join in the motion for summary judgment, the undersigned uses the term "Defendants" for ease of reference.

Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 56]. The motion having been fully briefed [ECF Nos. 62, 63], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

I.   Factual Background

The SCDMH and the South Carolina Department of Corrections ("SCDC") have entered into an interagency agreement whereby the Sexually Violent Predator Treatment Program ("SVPTP") residents are housed in a segregated location within the Broad River Correctional Institution ("BRCI"). *See* S.C. Code Ann. §44-48-100(A); *In re Luckabaugh*, 568 S.E.2d 338, 345 (2002). In December 2016, the operation of the SVPTP was transferred to Correct Care Recovery Solutions.[2] Scaturo Aff. ¶ 3.[3]

In his amended complaint, Plaintiff alleges the following: (1) the interagency agreement effectively puts him back in prison in a punitive environment; (2) he is

---

[2] The undersigned notes that because Defendants are no longer responsible for the SVPTP, Plaintiff's requests for injunctive relief are moot. *See Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007) (finding that a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to the conditions of his confinement there).

[3] The affidavit of Holly Scaturo may be found at ECF No. 52-5.

receiving inadequate mental treatment; (3) the living conditions are worse than prison living conditions; (4) he was civilly-committed without a showing that he was dangerous; (5) the SVPA is unconstitutional as applied to him; (6) he is served contaminated food; (7) members of the Behavior Management Committee have said things to him that have traumatized him for life; (8) he is without computers or printers, which has impeded him from filing lawsuits against the staff; (9) he is frequently on lockdown; and (10) he is treated like a "brainless imbecile." [ECF No. 16].

II. Discussion

    A. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B. Analysis

Involuntarily-committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg v. Romeo,* 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed. *See Seling v. Young,* 531 U.S. 250, 265 (2001); *Youngberg,* 457 U.S. at 324. In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. *Youngberg,* 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a

4

substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. *Id.* at 322.

1. Interagency Agreement

Plaintiff claims that the interagency agreement is punitive. The SVPA states "[t]he Department of Mental Health may enter into an interagency agreement with the Department of Corrections for the control, care, and treatment of [persons committed to the SVPTP]." S.C. Code Ann. § 44-48-100(A). Under the agreement, the SCDMH is responsible for all control, care, and treatment aspects of its residents. Scaturo Aff. ¶ 8. The SCDC is only responsible for providing outside security and maintenance, meals, laundry services, and sanitation. *Id*. Plaintiff's allegations that the interagency agreement is punitive are insufficient to survive summary judgment.

2. Inadequate Medical Treatment

a. Mental Health Treatment

The amended complaint alleges "they want me to relate my sex crime to a person with young children victims (sic) and [Plaintiff] can't do that." [ECF No. 16 at 4]. Upon commitment to the SVPTP, all residents are provided with two options regarding treatment: 1) the resident may participate in active treatment, which consists of intensive group and personal therapy that includes examination and discussion of past sexually offending behavior and self-disclosure about thoughts and feelings related to that behavior, or 2) the resident may elect for the general treatment track, which does not

5

require admitting to or discussing committing past sexual offenses, and which focuses solely on current behavior. Scaturo Aff. ¶ 10; *see also* ECF Nos. 52-12, 52-13. The individual is not required to enter either treatment track and may refuse participation in treatment. Scaturo Aff. ¶ 10. Plaintiff was in active therapy treatment when the SVPTP was transferred to Correct Care in December 2016 and was receiving therapy pursuant to his treatment plan. *Id.* Defendants note that he may change tracks or refuse to participate in therapy at any time. *Id.* Plaintiff has not shown that Defendants' decisions regarding his mental health treatment depart so substantially from accepted professional judgment such that they cannot be based on professional judgment. *Youngberg,* 457 U.S. at 324. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim of improper mental health treatment.

          b.      Physical Health

Plaintiff alleges he was not was not told of a diagnosis of liver disease for two years and is being forced to undergo medical tests regarding his liver. [ECF No. 16-3 at 11]. He does not address this claim in his response and it appears he has abandoned it. "The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action." *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009). Additionally, Plaintiff has not identified a named defendant that allegedly hid this diagnosis. Plaintiff's medical records reveal that he has received medical testing at his request when appropriate. [ECF No. 52-16]. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim of improper medical care.

c.  Medical Malpractice

To the extent Plaintiff asserts claims for medical malpractice against any of the Defendants, they argue that he has failed to comply with the prerequisites for filing a claim pursuant to S.C. Code Ann. § 15-36-100(B). The statute requires that as part of a "Notice of Intent to Sue," a plaintiff alleging a medical malpractice claim must also file an affidavit of an expert witness. The undersigned agrees that Defendants are entitled to dismissal of any claim for medical malpractice against Defendants.[4]

3.  Conditions of Confinement

Plaintiff alleges that the conditions of his confinement are unconstitutional because he is not allowed to give other residents a piece of candy or pack of sugar without being punished. Residents in the SVPTP are not allowed to trade, borrow, lend, sell, buy, or otherwise give or receive any items from other residents. Scaturo Aff. ¶ 14; *see also* ECF No. 52-18. Defendants argue these policies are necessary to prevent contraband from entering the units and being transferred among the residents. Scaturo Aff. ¶ 14. Defendants state that such policies are further implemented to prevent trading items for personal favors, which could be sexual in nature, and for the general security and safety of the residents and staff. *Id*. If Plaintiff is found to have violated this policy, he could be subject to consequences, including the loss of a privilege level, as detailed in the Unit Privilege System policy. *Id*. Because Plaintiff has not shown that such

---

[4] For the same reasons, the undersigned recommends defendant Swan's motion to dismiss be granted. Although Swan's motion to dismiss did not address any alleged constitutional claims, the undersigned finds that Plaintiff has failed to properly plead additional claims against Swan.

7

regulations depart so substantially from accepted professional judgment that they cannot be based on professional judgment, Defendants are entitled to summary judgment. *Youngberg,* 457 U.S. at 324.

4. Confinement Without a Showing He Was Dangerous

Plaintiff alleges he is improperly confined under the SVPA because he has not been shown to be dangerous. By order dated August 10, 2009, Plaintiff voluntarily waived all rights regarding his civil commitment, including for a jury trial and to present a defense to the state's evaluation. [ECF No. 52-11]. Therefore, Plaintiff waived his rights to challenge his commitment under the SVPA, and Defendants are entitled to summary judgment. *Id.*

5. Challenge to SVPA as Applied to Plaintiff

Plaintiff contends the SVPA as "applied is a violation of law." [ECF No. 16 at 5]. Plaintiff alleges the program was to only last 18–24 months pursuant to policy, but it is punitive and for life. [ECF No. 16-4 at 1.] Plaintiff also alleges that the attorney general, Defendant Wilson, is the sole decision-maker regarding a resident's release from the program. [ECF No. 16-3 at 9].

"A person committed pursuant to [the SVPA] must have an examination of his mental condition performed once every year." S.C. Code Ann. § 44-48-110. The annual examination report is provided to the court, which in turn conducts an annual hearing to review the status of the committed person. *Id.* "The committed person has a right to have an attorney represent him at the hearing, but the committed person is not entitled to be present at the hearing." *Id.*

Based on the yearly review, "[i]f the court determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be at large, and, if released, is not likely to commit acts of sexual violence, the court must schedule a trial on the issue." *Id*. The burden of proof is on the State to prove beyond a reasonable doubt that the individual still meets the criteria of a sexually violent predator. Courts have consistently held that the SVPA is a civil, non-punitive scheme that does not violate the double jeopardy or ex-post facto clauses. *See, e.g., Michau v. Charleston County, S.C.*, 434 F.3d 725, 727 (4th Cir. 2006) (citing *In re Matthews*, 550 S.E.2d 311, 316 (S.C. 2001) (concluding that the SVPA is civil rather than criminal and that confinement under the SVPA is non-punitive)); *Kansas v. Hendricks*, 521 U.S. 346, 365–69 (1997) (concluding that Kansas's Sexually Violent Predators Act established civil rather than criminal detention scheme)). Because Plaintiff has not shown that the SVPA is unconstitutional as applied to him, Defendants are entitled to summary judgment on this claim.

6. Food

Plaintiff alleges that he has to eat food with razor blades, human waste, and blood, among other foreign objects. [ECF Nos. 16 at 5, 16-4 at 2.] Plaintiff does not allege a specific incident of contaminated food.

Defendants state that food is provided to SVPTP residents through BRCI and residents are served the same food served to SCDC inmates. Scaturo Aff. ¶ 17. Defendants note that reasonable care is provided by the staff at BRCI and the SVPTP to prevent insects or other debris from contaminating the food or drink. *Id*. All food carts

and drink containers are secured using locks or zip ties to prevent potential contamination. *Id*. In the event a resident finds contaminated food, the resident is to report it immediately on a Request to Staff form for the matter to be investigated. *Id*. If a complaint is verified, the food or drink issue will be documented, a new tray or drink will be provided to the resident, and SCDC will be notified of the issue. *Id*.

Plaintiff has provided no evidence that he has been served contaminated food. Defendants are entitled to summary judgment on this claim.

7. Complaints Regarding the Behavior Management Committee

Plaintiff asserts a claim regarding the Behavior Management Committee ("BMC") regarding "punitive sanctions for very miniscule things." [ECF No. 16-4 at 2]. The Behavior Management, Behavioral Expectations, and Unit Privilege System policies provide the rules, regulations, and incentives for residents of the program. Cynthia Helff, former chair of the BMC, states that it is a panel of at least 4 members within the SVPTP staff that reviews any violent, sexual, or otherwise inappropriate behavioral incident of SVPTP residents. Helff Aff. ¶ 13.[5] Helff notes that s BMC hearing is held for each such incident and the resident involved is given an opportunity to speak or provide a written statement at the hearing and provide witnesses who the BMC should interview. *Id*. According to Helff, once all information is collected, the BMC deliberates on the matter and, by majority vote, may impose restrictions or consequences. *Id*. Helff states that the BMC always considers the resident's psychiatric and cognitive functioning level in any

---

[5] The affidavit of Helff may be found at ECF No. 52-2.

decision. *Id*. Plaintiff has not stated a claim of constitutional magnitude regarding the BMC.

Plaintiff complains about a 10:00 p.m. curfew, but the curfew was instituted by Scaturo, not the BMC, because of the increase in violent incidents. Scaturo Aff. ¶ 20. Plaintiff has not shown that the decision to impose a curfew departs so substantially from accepted professional judgment, such that they cannot be based on professional judgment. *Youngberg,* 457 U.S. at 324.

### 8. Lack of Computers and Printers

Plaintiff alleges that the computers were taken away in 2014 because two residents were sending each other explicit material. [ECF No. 16-4 at 2]. Although Plaintiff alleges that the lack of computers impedes his ability to file lawsuits, he has not identified with specificity any injury it has caused him, such as a specific lawsuit he was unable to bring without a computer. *Lewis v. Casey,* 518 U.S. 343, 351–52 (1996); *Cochran v. Morris,* 73 F.3d 1310 (4th Cir. 1996); *see also Christopher v. Harbury,* 536 U.S. 403, 414–15 (2002) (stating that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong"). Because Plaintiff has failed to present evidence of an actual injury, Defendants are entitled to summary judgment on this claim.

### 9. Frequent Lockdowns

Plaintiff claims he was locked down for 144 days and 72 days. [ECF No. 16 at 5.] Plaintiff further claims "we were locked down 90 days times" in 2015 and 16 times in 2016. [ECF No. 16-4 at 2]. Defendants state that lockdowns of a unit or the SVPTP

facility occur for safety of the residents, staff, and any worker or other individual in the facility or unit. Scaturo Aff. ¶ 24. According to Defendants, units are sometimes locked down due to staff shortages when numerous staff are off site because of transports of residents to medical or court appointments, and are not imposed for a punitive purpose. *Id*. Defendants state that residents were locked down more frequently from March–July 2015 due to extensive renovations of the Edisto and Congaree units. *Id*.

According to Defendants, individual residents may be placed on therapeutic management, which includes therapeutic room restriction (restriction to resident's unlocked room) ("TRR") or Secure Management Status (restriction to resident's locked room), pursuant to the Behavior Management policy. *Id*. at ¶ 25; *see also* ECF No. 52-17 at 2–4. Defendants state that residents may be placed on either status for threatening behavior or other behavioral infractions when intermediate behavioral management techniques, as outlined in the Behavior Management policy, do not resolve the behavioral issue. *Id*. Defendants state that, while these methods may include room restriction, these techniques are not "lockdowns," but are designed and implemented to facilitate the cognitive therapy and behavioral intervention model used at the SVPTP. Scaturo Aff. ¶ 25. A resident's belongings may be removed from his room during TRR if it is determined to be necessary by staff. [ECF No. 52-7 at 3]. A resident placed on SMS will have all items removed from the room and left with only a blanket and mattress. *Id*. at 4. Defendants argue that such decisions would be made based on SVPTP policies and made in the professional judgment of the resident's treatment team. Scaturo Aff. ¶¶ 25, 30.

Plaintiff has failed to show how these policies substantially depart from accepted professional judgment and Defendants are therefore entitled to summary judgment.

10. Patient Rights

Plaintiff claims he is treated like a "brainless imbecile" and is not provided rights provided to other mental health patients. The South Carolina legislature specifically excluded individuals committed under the SVPA from statutory protections provided mental health patients. *See* S.C. Code Ann. §44-22-10(11). Plaintiff has failed to show how this is a violation of his constitutional rights, as they are rights arising under state statutory law.

11. Eleventh Amendment Immunity

Defendants argue that, to the extent Plaintiff sues them for monetary damages in their official capacities, they are immune from suit.[6] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Here, Defendants are agents of the state and are therefore immune from suit for monetary damages in their official capacities.

---

[6] Defendants are sued in their official and individual capacities.

III.     Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the court grant Defendants' motion for summary judgment [ECF No. 52]. For the reasons discussed herein, the undersigned also recommends Swan' motion to dismiss [ECF No. 30] and McGill and Wilson's motion to dismiss [ECF No. 34] also be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

June 5, 2017  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).